# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|                                              |     |                                    |
|----------------------------------------------|-----|------------------------------------|
|                                              |  *  |                                    |
| JERRY GORALSKI LAMB,                         |     |                                    |
|                                              |  *  |                                    |
| *Plaintiff*,                                 |     |                                    |
|                                              |  *  |                                    |
| v.                                           |  *  | Civil Action No. 8:19-cv-03469-PX  |
|                                              |  *  |                                    |
| THOMAS MODLY, SECRETARY OF                   |  *  |                                    |
| THE NAVY, *et al.*,                          |     |                                    |
|                                              |  *  |                                    |
| *Defendants*.                                |     |                                    |

*** 

## MEMORANDUM OPINION

This action stems from Plaintiff Jerry Goralski Lamb's ("Lamb's") previous employment at the Department of the Navy ("Navy"). ECF No. 42. Lamb has sought leave to file his Second Amended Complaint and moves to seal certain administrative records. ECF Nos. 42 & 43. Defendants, the United States, Secretary of Navy Thomas Modly, Terrence O'Connell, and Richard Paquette ("Paquette") (collectively "the Defendants"), have not filed a response opposing Lamb's motion to seal. However, they do oppose Lamb's latest amendment to the complaint and move for dismissal or alternatively for summary judgment on all claims. ECF Nos. 37 & 60. The motions are fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the reasons that follow, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss or alternatively for summary judgment (ECF No. 37); and GRANTS Plaintiff's motion to seal (ECF No. 43).[1]

---

[1] In a prior action between Lamb and the Navy, this Court granted the Defendants' request to seal the underlying administrative record because the records included Lamb's protected health information such that redaction would have been difficult if not impossible. *See Lamb v. Spencer*, No. PX-16-2705, ECF No. 49 (D. Md. May 9, 2018). To be consistent, and because Defendants have not opposed Lamb's request, the Court will order the sealing of the Reports of Investigation relating to his administrative cases before the U.S. Equal Employment Opportunity Commission. *See* ECF No. 53, Exs. 1 & 2.

## I.      Background

Lamb, proceeding *pro se*, is an African American male, over the age of forty, who is diagnosed with anxiety, depression, sleep apnea, insomnia, severe allergies, chronic knee pain, and herniated disks.  ECF No. 42 ¶ 25; ECF No. 37-3 at 2.  He served as a Contract Specialist for a division of the Navy from February 2009 to August 2015.  ECF No. 42 ¶¶ 27–28.

This is not Lamb's first lawsuit.  For years, Lamb has litigated the alleged discrimination and retaliation he had suffered while employed with the Navy.  He has pursued labyrinthine overlapping administrative and civil actions that are now before this Court for a second time. Because the procedural posture of these actions is central to the resolution of the Defendants' motion, the Court summarizes each below.

### A.      2014 EEOC Complaint

In 2013, Lamb reported to supervisor Michelle Webb ("Webb").  *Id.* ¶ 34.   On many occasions, Lamb requested that he receive a promotion, which Webb denied each time.  *Id.* ¶¶ 35, 38–39.  In response, Lamb filed two complaints in October and November 2013 with the U.S. Equal Employment Opportunity Commission ("EEOC"), averring that Webb's refusal to promote him amounted to discrimination.  *Id.* ¶¶ 38–39, 44.

While the 2013 EEOC Complaints were pending, coworker Kerry Harding ("Harding") emailed Lamb and accused him of being disinterested and uncooperative on their shared work assignments.  *Id.* ¶ 36.  Lamb suspected that Webb had told Harding to send this email so to provide cover for Webb's refusal to promote him.  *Id.* ¶¶ 37–39.  Then, on June 10, 2014, Webb issued Lamb a reprimand letter for refusing to sign a non-disclosure agreement pertaining to a Navy contract to which Lamb had been assigned.  *Id.* ¶¶ 40–41.

Lamb viewed the email and reprimand letter as "part of a retaliatory campaign to punish" him from his prior protected activity. *Id.* ¶ 43. Accordingly, he filed another EEOC Complaint on June 30, 2014, asserting race, gender, and age discrimination and reprisal for having previously filed an EEOC Complaint.[2] *Id.* ¶ 44; *see also* ECF No. 53, Ex. 1 at 000038; ECF No. 37-4 at 3.

Thereafter, Lamb avers that he suffered additional retaliation on account of his EEOC filings. First, Webb denied his request to telework from July 23 through August 29, 2014, claiming she had not received the necessary medical documentation to support the request. ECF No. 42 ¶ 45. Webb next "retaliated" against Lamb by changing his work status to "inactive." *Id.* ¶ 46. According to Lamb, being placed on "inactive" status affected his ability to meet his target number of contract procurements for that performance cycle. *Id.*

Additionally, the Navy, through Kelley Bean ("Bean"), renewed the request that Lamb undergo a psychological evaluation on account of his threatening comments he had supposedly directed at Webb in October 2013. *Id.* ¶¶ 47, 49. Webb also marked Lamb "Absent Without Leave" ("AWOL") on August 21, 2014 because he left work two hours early to meet with an Employee Assistance Program counselor, even though Webb previously had told Lamb that he need not obtain advance permission to leave for such counseling. *Id.* ¶¶ 50–51. Lastly, in September 2014, Lamb was suspended for one day for failing to provide required medical documentation clearing him to work before he attended a training class. *Id.* ¶¶ 53, 57. Lamb suggests the suspension was pretextual because Webb never told Lamb that he needed such medical documentation. *Id.* ¶ 56.

---

[2] Although Lamb alleges that he had he filed the first EEOC complaint in July 2014, the administrative case file reflects that he filed it on June 30, 2014. *See* ECF No. 53, Ex. 1 at 000038; ECF No. 37-4 at 3.

Based on these events, Lamb filed another EEOC complaint on October 2, 2014, which was then consolidated with the June 2014 EEOC Complaint.[3]  *Id.* ¶ 17; ECF No. 53, Ex. 1 at 000030–000044; ECF No. 37-2 (hereinafter jointly referred to as the "2014 EEOC Complaint"). The 2014 EEOC Complaint ultimately included allegations of race, national origin, sex, age, and religious discrimination, hostile work environment, and retaliation.  ECF No. 37-3 at 1–4.

The Navy investigated the 2014 EEOC Complaint and, in March of 2015, issued its first Report of Investigation ("ROI") totaling 2,383 pages with exhibits.  ECF No. 37-2; ECF No. 53, Ex. 1.  The ROI notified Lamb of his right to request a final decision on the current record or to proceed to a hearing before an administrative judge ("AJ").  ECF No. 37-2.  Lamb chose the latter.  ECF No. 37-4 at 3.

Once before the AJ, the Navy moved for a decision without a hearing, which Lamb opposed.  ECF No. 37-3 at 2.  But Lamb never appeared for the scheduled hearing or the follow-up status conference.  ECF No. 37-1 at 8.  As a result, the AJ granted the Navy's motion and issued a written decision on January 8, 2018.  *Id.*; ECF No. 37-3 at 2, 43.

The Navy adopted the AJ's findings and issued its final agency decision on January 12, 2018.  ECF No. 37-4.  The Navy concluded that Lamb had not established any of his claims and notified him that that he could either appeal the decision to the EEOC or file a civil action in federal court.  *Id.* at 4–5.  Lamb chose to appeal the decision to the EEOC.  ECF No. 37-5.  On August 30, 2019, the EEOC affirmed the decision and notified Lamb that he could file a civil suit in federal court within 90 days of receiving the decision.  *Id.* at 11–12.  Lamb filed this action on December 4, 2019.  ECF No. 1.

---

[3] The assigned case number for the June and October complaints are respectively DON-14-42191-01776 and DON-14-42191-02994. ECF No. 37-4.

### B.   2015 EEOC Complaint

As the 2014 EEOC Complaint wound its way through the administrative process, Lamb

pursued separate EEOC claims arising from events that took place in 2015.  ECF No. 37-6.

Specifically, in January 2015, Lamb was assigned to work under a new supervisor, Donna Bibee

("Bibee").  ECF No. 42 ¶ 62.  On January 25, 2015, Lamb made certain requests to Bibee for

various accommodations, including a lateral transfer to a different division, ergonomic seating,

and permission to move his desk to the first floor and away from air vents.  *Id.* ¶¶ 64, 66.

According to Lamb, Bibee denied these requests.  *Id.* ¶ 66.

In February 2015, Lamb informed Bibee that he needed to take leave to treat his

herniated disks, anxiety, and depression.  *Id.* ¶ 65.  Lamb steadfastly maintains that he submitted

the necessary medical documentation to support the request.  *Id.* ¶¶ 65–66.  While this request

was pending, Bibee gave Lamb a poor performance review and then "shared it with all

employees having access to that system of records."  *Id.* ¶ 67.

Then, on March 6, 2015, Lamb and his team were reassigned to another supervisor,

Terrence O'Connell ("O'Connell").  *Id.* ¶ 68.  Three days later, Lamb began his medical leave.

*Id.* ¶ 69.  On March 14, 2015, while still on leave, Lamb received an email from O'Connell,

conveying concerns about whether Lamb had enough sick leave time to cover the planned time

off.  *Id.* ¶ 72.  O'Connell also informed Lamb that he needed to submit medical documentation

supporting this leave when he returned to work on March 26, 2015.  *Id.*

Shortly before his scheduled return, Lamb was in a car accident and injured his spine

such that he had to be hospitalized.  *Id.* ¶ 75.  Lamb submitted a Family Medical Leave Act

("FMLA") request for leave taken in March 2015.  *Id.* ¶ 79.  O'Connell again reminded Lamb to

provide supporting medical documentation.  *Id.* ¶ 77.  While Lamb insists that he sent this

documentation via Federal Express on April 8, 2015, O'Connell never received the records and so denied the FMLA request on April 16.  *Id.* ¶¶ 80–81.

In late April, Lamb asked O'Connell if he could use annual leave time to cover his absence.  *Id.* ¶ 84.  O'Connell denied Lamb's request, noting he could no longer "be spared from work."  *Id.*  After Lamb did not return to work, on or about May 14, 2015, O'Connell marked him as AWOL for a total of 43 days and petitioned for his removal.  *Id.* ¶¶ 86, 91.  Lamb was officially terminated on August 17, 2015.  *Id.* ¶ 28.

Before his termination became effective, Lamb filed a formal EEOC Complaint on July 27, 2015.[4]  ECF No. 53, Ex. 2 at 000020.  In it, Lamb averred that Bibee and O'Connell's repeated denials of his accommodation requests from February to April 2015 amounted to race, national origin, age, religious, and disability discrimination, retaliation, and also created a hostile work environment.  *Id.* at 000021–000024; *see also* ECF No. 37-7.  The Navy investigated the 2015 EEOC Complaint and, in January 2016, issued another ROI totaling 1,141 pages.  ECF No. 37-6.

After receiving the ROI, Lamb requested a hearing in March of 2016.  ECF No. 37-7 at 4.  But Lamb, once again, failed to post.  He canceled pre-arranged depositions and then failed to appear for his own deposition.  ECF No. 37-1 at 9.  Because Lamb remained "non-compliant" with the AJ's discovery related orders, the AJ ultimately remanded the complaint to the Navy for a decision in October 2017.  ECF No. 37-7 at 4.

The Navy issued a final decision on December 1, 2017, finding Lamb had failed to establish his claims.  *Id.* at 35.  Lamb again was notified of his right to either appeal to the EEOC or file a civil action.  *Id.* at 35–37.  He appealed, and the EEOC affirmed the Navy's decision on

---

[4] The case number for this second Complaint was DON-15-42191-01801.  *See* ECF No. 53, Ex. 2 at 000002.

August 22, 2019.  ECF No. 37-8 at 7, 10.  Lamb moved for reconsideration, which the EEOC

denied on February 19, 2020.  ECF No. 37-9 at 2.

### C.     MSPB Case related to Lamb's Termination

Lamb separately elected to challenge the grounds of his termination before the Merit

Systems Protection Board ("MSPB").  *See Lamb v. Spencer*, No. PX-16-2705, ECF No. 23-23

(D. Md. Aug 23, 2017) (hereinafter *Lamb I*).   On August 20, 2015, he filed a mixed case appeal

with the MSPB challenging his removal from federal service.  ECF No. 42 ¶ 21; *see also Lamb I*,

ECF No. 23-23 at 1.  The Navy was required to establish, by a preponderance of the evidence,

that Lamb was properly declared AWOL.  *See Lamb I*, ECF No. 23-23 at 2.  Lamb meanwhile

argued that his absence was necessitated by various medical conditions, which his supervisors

refused to accommodate, and which resulted in O'Connell improperly declaring him AWOL.  *Id.*

at 3.   He also raised the full panoply of affirmative defenses, including race, gender, and

disability discrimination, retaliation, harmful procedural error, violation of the law based on his

supervisor's sharing of his medically sensitive information, violation of due process, and hostile

work environment.  *Id.* at 18–19, 26.

After a two-day hearing, the MSPB affirmed Lamb's termination and found he failed to

prove any of his affirmative defenses.  *Id.* at 34; ECF No. 42 ¶ 21.  Lamb appealed the MSPB's

decision to the EEOC, which was affirmed on June 23, 2016.  *See Lamb I*, ECF No. 23-24.

### D.     Review of MSPB Decision in *Lamb I*

After the EEOC affirmed the MSPB decision, Lamb pursued further remedies before this

Court, again focusing on his denied accommodation requests beginning in January 2015 through

his termination in August.[5]  *See Lamb I*, ECF No. 1; *see also id.*, ECF No. 41 ¶¶ 27–52.

---

[5] This Court had jurisdiction to consider all claims raised before the MSPB.  *See Lamb I*, ECF No. 69 at 7
(quoting *Rupert v. Green*, 605 F. Supp. 2d 705, 713 (D. Md. 2009) (citing 5 U.S.C. § 7703(c))).

Mirroring his affirmative defenses before the MSPB, Lamb filed an array of claims including violations of the Privacy Act of 1974 ("Privacy Act"), 5 U.S.C. § 552a; the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 790 *et seq.*; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; and other related claims. *See id.*, ECF Nos. 1 & 6. Then, with the assistance of counsel, Lamb filed a Second Amended Complaint in which he settled on the following claims against the Navy: disability discrimination in violation of the Rehab Act and the ADA (Count I); failure-to-accommodate his leave requests in violation of the Rehab Act and the ADA (Count II); and interference with his rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2612, and retaliation for requesting FMLA leave (Count III). *See id.*, ECF No. 41.

Ultimately, this Court dismissed the ADA and FMLA claims because no such causes of action exist for federal employees suing the United States. *See id.*, ECF No. 69 at 8–9. The Court also granted summary judgment as to the remaining discrimination and retaliation claims. *See id.* at 9–14. This decision was affirmed by the United States Court of Appeals for the Fourth Circuit. *See id.*, ECF No. 83. As the Fourth Circuit aptly reasoned:

> Lamb was absent from work without approval for 43 days. In that time, despite repeated requests from Appellee, Lamb failed to provide adequate documentation establishing the nature of his disability and demonstrating that the requested accommodation would allow him to perform his job requirements. In addition, the record does not contain any evidence that Lamb's termination was based on discrimination or retaliation. We therefore conclude that the district court did not err in granting summary judgment on Lamb's Rehabilitation Act claims.

*See id.*, ECF No. 83-1 at 4 (citations omitted).

Lamb did not petition the Fourth Circuit for rehearing or the United States Supreme Court for a Writ of Certiorari. Thus, the Fourth Circuit decision became final on October 18, 2019. *See id.*, ECF No. 84.

## II.     This Case

Regrettably in the current action, Lamb has made a mess of it. He has essentially thrown together a hodge-podge of allegations from all the prior administrative and civil cases. ECF No. 42. Lamb focuses first on a subset of the claims that he raised in his 2014 EEOC Complaint to support a retaliation claim. *See id.* ¶¶ 34–58, 150; ECF No. 37-3. Next, hoping to revive his claims in the 2015 EEOC Complaint and before the MSPB, Lamb takes aim at the Navy's 2015 denial of his accommodation requests, its handling of medically sensitive information, and the decision to terminate him. *See* ECF No. 42 ¶¶ 58–101, 120–26, 131–39, 150; ECF No. 37-7; *Lamb I*, ECF No. 23-23. Lamb also challenges the adequacy of the process he was afforded for his 2015 EEOC Complaint and adds Privacy Act claims arising from the Navy's disclosure of his employment records to the Millennium Challenge Corporation ("MCC") used to check Lamb's background in connection with his employment applications. *See* ECF No. 42 ¶¶ 102–10, 127–29, 141–47. Lamb lastly complains that Defendants deliberately frustrated his efforts to file for workers' compensation benefits, violating his due process rights. *Id.* ¶¶ 111–12, 148.

Defendants mount a comprehensive attack on each iteration of the complaint. ECF Nos. 37-1, 56, & 60. The Court must now untangle Lamb's alleged facts and corresponding claims—which have been somewhat of a moving target—and will start with his motion for leave to file his Second Amended Complaint.

## III.    The Second Amended Complaint

In filing his Second Amended Complaint, Lamb attempts to address the defects that

Defendants raised in the first motion to dismiss.  ECF No. 42.  While the factual predicate for the First and Second Amended Complaint remains largely the same, the Second Amended Complaint modifies his Title VII claims to include Webb's alleged retaliation in 2014 for filing EEOC complaints.  *See id.* ¶ 150.  Lamb also adds claims pursuant to the Federal Tort Claims Act ("FTCA"), 26 U.S.C. § 2671 *et seq.*, and abandons his FMLA claims.  ECF No. 42 at 26, 32. The proposed Second Amended Complaint raises claims under the Rehab Act (Count I); the Privacy Act (Count II); the Due Process Clause (Count III through V); Title VII's anti-retaliation provision (Count VI); and the FTCA (Count VII).

Because Lamb has already amended his Complaint once (ECF No. 10), he requires leave of the Court to amend again.  Fed. R. Civ. P. 15(a)(1)-(2).  Defendants oppose the request because, they argue, the proposed amendments fail as a matter of law and are thus futile.  ECF No. 60 at 2.  While this Court "may deny leave if amending the complaint would be futile," *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quotation omitted), as discussed more fully below, one of Plaintiff's amended Title VII claims survives challenge. Thus, amendment is not futile.  ECF No. 42.  The Court will permit amendment and accepts the Second Amended Complaint as the operative complaint.[6]  *See* Fed. R. Civ. P. 15(a)(2).

## IV.     Motion to Dismiss or For Summary Judgment

### A.     Standard of Review

Defendants move to dismiss or, in the alternative, for summary judgment on all claims. ECF No. 37.  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the

---

[6] Although Defendants' motion to dismiss and memorandum in support target the First Amended Complaint (ECF No. 37-1), the Court nonetheless considers the arguments raised in that motion as well as those specifically aimed at the Second Amended Complaint.  *See* ECF No. 60; *see also Johnson v. Asset Acceptance, LLC*, No. GLR-15-538, 2015 WL 8760737, at *1 (D. Md. Dec. 15, 2015); *Buechler v. Your Wine & Spirit Shoppe, Inc.*, 846 F. Supp. 2d 406, 415 (D. Md. 2012); *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).

complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court considers the complaint, as well as documents attached to it that are "integral to the complaint."  *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citation omitted). "[T]he Court may also take judicial notice of docket entries, pleadings, and papers in other cases without converting a motion to dismiss into a motion for summary judgment."  *Johnson v. United States Dep't of Justice*, No. PJM-14-4008, 2016 WL 4593467, at *4 (4th Cir. Sept. 2, 2016) (citations omitted); *see also Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004).

Lamb proceeds *pro se*, and so the Court must construe the Second Amended Complaint liberally.  *See Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980).  The Court, however, cannot ignore a clear failure to allege facts setting forth a cognizable claim.  *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012); *see also Bell v. Bank of Am., N.A.,* No. RDB-13-0478, 2013 WL 6528966, at *1 (D. Md. Dec. 11, 2013) ( "Although a pro se plaintiff is general[ly] given more leeway than a party represented by counsel . . . a district court is not obligated to ferret through a [c]omplaint . . .  that is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." (quotations omitted)).

Under Rule 56(a), summary judgment is appropriate when the Court, viewing evidence

presented outside the four corners of the complaint most favorably to plaintiff, finds no genuine disputed issue of material fact, thus entitling the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)). Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is warranted. *Celotex*, 477 U.S. at 322.

If the nonmovant opposes summary judgment on the grounds that more discovery is needed, he must submit an affidavit or declaration pursuant to Rule 56(d). *See Hamilton v. Mayor of Balt.*, 807 F. Supp. 2d 331, 341 (D. Md. 2011) (quoting Fed. R. Civ. P. 56(d); citing *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002)). In the affidavit, the nonmovant must identify the additional discovery needed to defeat the summary judgment motion. *Id.* It is not sufficient for the nonmovant to "demand discovery for the sake of

12

discovery." *Id.* at 342 (quotation omitted).  Accordingly, a "request for additional discovery is properly denied where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Id.* (quotation and citation omitted).

### B.     Claims Barred as *Res Judicata*

Defendants principally argue that most claims in the Second Amended Complaint were raised or could have been raised in *Lamb I* and are thus barred under the doctrine of *res judicata*. ECF No. 37-1 at 4, 17.  The Court largely agrees.

The preclusive effect of the judgment in *Lamb I* is a question of federal law.  *Nathan v. Takeda Pharm. Am., Inc.*, 546 Fed. App'x 176, 177 (4th Cir. 2013) (citing *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008)).  Under the federal doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Id.* at 178 (quoting *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004)).  "By precluding parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding, '[r]es judicata . . . encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.'"  *Pueschel*, 369 F.3d at 354 (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).

The doctrine of *res judicata* applies when there is: (1) a final judgment on the merits in a prior suit; (2) an identity of the parties or their privies; and (3) an identity of the cause of action in both the earlier and the later suit.  *Id.* at 354–55 (citation omitted).  Because *res judicata* is an affirmative defense, new claims are barred only if clearly precluded from the face of the complaint.  *See Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (quoting *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).  "[W]hen

entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." *Id.* (quotations omitted).

Viewing the Second Amended Complaint most favorably to Lamb, the lion's share of his claims are barred.  As to the first *res judicata* element, the Court in *Lamb I* granted summary judgment on claims arising from his 2015 accommodation requests and termination, finding that the Navy had not failed to provide reasonable accommodation, nor had it discriminated against Lamb because of any disability.  *See Lamb I*, ECF No. 69 at 9–14.  Thus, in *Lamb I* the Court entered "a final adjudication on the merits under Fourth Circuit cases and under the Maryland authorities."  *Pottratz v. Davis*, 588 F. Supp. 949, 954 (D. Md. 1984) (emphasis in original); *Adkins v. Allstate Ins. Co.*, 729 F.2d 974, 976 n.3 (4th Cir. 1984) ("For purposes of *res judicata*, a summary judgment has always been considered a final disposition on the merits." (citations omitted)).

As to the second *res judicata* element, the core parties in both actions are identical or are in privity.  In both suits, Lamb is the plaintiff and the Navy, through its Secretary, is a defendant. *See* ECF No. 42; *Lamb I*, ECF No. 41.  The new individual Defendants, O'Connell, Paquette, and others yet to be served, are in privity with the Navy in that their interests are "so identified with the interests of another that representation by one party is representation of the other's legal right."  *Nathan*, 546 Fed. App'x at 178 (quoting *Weinberger v. Tucker*, 510 F.3d 486, 491 (4th Cir. 2007)).  The individual Defendants are employees or officers of the Navy and were "acting in their capacities as … employees" of the Navy, "when they committed the alleged wrongdoing."  *Id.*; *see also Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 180 (4th Cir. 1998) (finding that "supervisors are not liable in their individual capacities for Title VII

14

violations"); *Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) (applying *Lissau* to ADA claims); *Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 413 (4th Cir. 2015) (finding same standards applicable to ADA and Rehab Act claims); *Kayzakian v. Buck*, 865 F.2d 1258, 1259 (4th Cir. 1988) (unpublished) ("Privity exists where a plaintiff attempts to relitigate the same claim by naming different governmental entities and employees as defendants" (citation omitted)); *Meisner v. Zymogenetics, Inc.*, No. CMC-15-3523, 2016 WL 4858741, at *4 (D.S.C. Sept. 15, 2016) ("[E]mployees and former employees of an entity are in privity with that entity for *res judicata* purposes." (quoting *Kayzakian*)). Thus, because the new individual Defendants are in privity with the Navy, this second element of *res judicata* is also met.

Regarding the third *res judicata* element, to be sure, Lamb has brought different causes of action in this case. But differences in pleading do not save these claims if they could have been brought in *Lamb I*. *See Pueschel*, 369 F.3d at 355. Where the new claims "arise out of the same transaction or series of transactions or the same core of operative facts" as in the first litigation, they are barred. *Id.* (quotation omitted); *see also Covert v. LVNV Funding, LLC*, 779 F.3d 242, 247 (4th Cir. 2015). To rule otherwise "would allow parties to frustrate the goals of *res judicata* through artful pleading and claim splitting given that '[a] single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law.'" *Pueschel*, 369 F.3d at 355 (quoting *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1166 (1st Cir. 1991)).

As to this element, many of the new claims share an "identity" of facts with those in *Lamb I*. *Id.* at 354. Most clearly, the Rehab Act claims asserted in Count I of the Second Amended Complaint are barred. The relevant events supporting Count I were front and center in *Lamb I*¸ when Lamb allegedly requested accommodations for claimed disabilities from January

2015 through his termination in August 2015.  *See Lamb I*, ECF No. 69 at 2–3.  Lamb also

alleged the same medical conditions as his disabilities—anxiety, depression, sleep apnea,

insomnia, severe allergies, chronic knee pain, and herniated disks—and that his supervisors

Bibee and O'Connell failed to accommodate his requests for reasonable accommodations,

including moving his desk, transfer to another department, ergonomic seating, telework, medical

leave, and annual leave.  *Compare* ECF No. 42 ¶¶ 116, 118, 120 *with Lamb I*, ECF No. 41 ¶¶ 15,

21, 22, 24, 28, 30, 43, 48, 57, 65; *see also Lamb I*, ECF No. 23-23 at 3–7.  In *Lamb I*, after

amending his pleadings twice and with assistance from counsel, Lamb settled on a failure-to-

accommodate claim under the Rehab Act based on his supervisors' repeated refusal to grant his

leave requests.  *See Lamb I*, ECF No. 41 ¶¶ 59–62.  This Court granted summary judgment on

this claim in Defendant's favor.  *See id.*, ECF No. 69 at 11.  Against this backdrop, Lamb's

Rehab Act claims in this case clearly arise from the "same core of operative facts" as the claims

in *Lamb I.   Pueschel*, 369 F.3d at 355.  Lamb does not get a second bite of the apple.  The Rehab

Act claims are dismissed.

Two Privacy Act claims (Count II) suffer the same fate.  The Second Amended

Complaint avers that Bibee gave him a poor evaluation in March 2015, then saved the evaluation

on an unsecured hard drive for others' viewing pleasure and in "retaliation" for his

accommodation requests.[7]  ECF No. 42 ¶¶ 67, 126 (citing ECF No. 10-3 at 27–29; ECF No. 10-

4).  Similarly, Paquette allegedly breached Lamb's privacy rights by emailing his personal health

---

[7] The Court suspects that Lamb's reference to his "close out performance" being shared on an unsecured hard drive in December 2018 is a typographic error, as none of the records cited in support of that allegation mention or reference conduct that took place as late as 2018, three years after his performance evaluation and termination.  ECF No. 42 ¶ 126 (citing ECF Nos. 10-3 & 10-4).  To the extent Lamb intended to bring a Privacy Act violation based on December 2018 conduct, the Complaint includes no "factual content" in support and thus fails to state a claim upon which relief can be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Any such claim must be dismissed, and because Lamb has already twice amended his Complaint, the dismissal is with prejudice.

information to "various unauthorized individuals, including to at least two unsecured public

email domains, without Plaintiff's consent."  *Id.* ¶ 124 (citing ECF Nos. 10-3 & 10-4).

According to exhibits incorporated by reference in the Second Amended Complaint, Lamb

appears to take issue with an email that Paquette sent Lamb and his lawyer that included

sensitive medical information—even though his lawyer had originally shared this information

with Paquette as part of Lamb's accommodation requests.  *See* ECF No. 10-4 at 27; *see also*

*Lamb I*, ECF No. 23-23 at 26.

These allegations clearly fall within *Lamb I*'s "core of operative facts," as they relate to

his supervisors' responses to, and treatment of, the same accommodation requests that were the

focus of *Lamb I*.  *Pueschel*, 369 F.3d at 355 (quotation omitted).  Although Lamb did not bring

Privacy Act claims in *Lamb I*, he did raise the claims before the MSPB hearing and in his First

Amended Complaint.  *See Lamb I*, ECF No. 23-23 at 26–28; ECF No. 6 (Count Ten,

"Mishandling of Privacy Act records").  That Lamb had pursued the identical Privacy Act claims

before the MSPB and then in *Lamb I* underscores how the claims fundamentally arise from the

same core set of facts.  They are barred as *res judicata*.

Next, the constitutional claims (Counts III and IV) also arise from the "same core of

operative facts" as *Lamb I*.  *Pueschel*, 369 F.3d at 355 (quotation omitted).  In this action, Lamb

brings a due process "stigma plus" claim based on supposed false accusations of his being

AWOL that led to his termination.  ECF No. 42 ¶¶ 131, 132.  He also requests a hearing to

challenge his termination.  *Id.* ¶¶ 137, 138.  But Lamb already had this hearing, and the validity

of his termination was central to his MSPB appeal and formed the basis for *Lamb I*.  *See Lamb I*,

ECF No. 69 at 4 (summarizing MSPB finding that Navy had "properly considered Lamb as

AWOL and [that he] 'failed to prove any of his affirmative defenses . . . by preponderant

17

evidence'" (quoting *Lamb I*, ECF No. 23-23)).  The Court granted summary judgment in Defendant's favor, finding the record amply demonstrated that Lamb was "AWOL for over 40 days" and that his termination was based on "legitimate, nondiscriminatory reasons."  *Id.* at 13. Lamb's newly minted constitutional claims, therefore, clearly arise from "the same core of operative facts" in *Lamb I* and are thus barred.  *Pueschel*, 369 F.3d at 355 (quotation omitted); *see also Sturgell*, 553 U.S. at 892.

The same logic applies to his FTCA claims (Count VII) as well as certain of his Title VII claims (Counts VI).  Lamb brings the tort claims of defamation and negligent infliction of emotional distress pursuant to the FTCA on the theory that he was terminated "without cause" and for "false" reasons.  ECF No. 42 ¶ 153.  Similarly, in two of his Title VII claims, Plaintiff alleges that his performance evaluation in March 2015 and his termination were retaliatory.  *Id.* ¶ 150.  These claims then "arise out of the same transaction or series of transactions" that underlie the claims in *Lamb I*, and the Court must dismiss them.  *Pueschel*, 369 F.3d at 355 (quotation omitted).

As to whether the claims shall be dismissed with or without prejudice, the Court recognizes that claims barred as *res judicata* are "truly unamendable."  *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009), *abrogated on other grounds Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020); *see also Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013). Because Lamb cannot cure the deficiencies by amending the pleadings yet again, the claims must be dismissed with prejudice.

### C.    Claims Not Barred

A few claims are not barred by *res judicata*, and thus merit separate treatment. Defendants admit that Lamb's workers' compensation claim involves conduct from December

2019 and thus would not have arisen in *Lamb I*.  ECF No. 37-1 at 21 n.3.  Likewise, Lamb

challenges the administrative process for his 2015 EEOC Complaint and the Navy's disclosure

of his records to MCC in 2016.  ECF No. 42 ¶¶ 127, 144–47.  Lamb's retaliation claim based on

the 2014 events also escapes preclusion.  Accordingly, the Court next discusses each of the non-

precluded claims separately.

### i.   Retaliation set forth in 2014 EEOC Complaint

In the Second Amended Complaint, Lamb avers that he withstood the following adverse

acts in 2014 in retaliation for having filed EEOC complaints in November 2013 and June 2014:

(1) requiring a psychological evaluation as a condition of continued employment; (2) placing

him on inactive status in July 2014; and (3) and a one-day suspension in September 2014.  *Id.* ¶¶

44–49, 57, 150.   The Defendants' sole retort to this retaliation claim is that it is barred by *res

judicata*.  The Court cannot agree.

These allegations were previously memorialized in the 2014 EEOC Complaint, but not in

the MSPB appeal that was the subject of *Lamb I*.  *See Lamb I*, ECF No. 69 at 3–4, 8.  More to the

point, the 2014 alleged retaliatory acts involved different supervisors than those involved in the

2015 events and concerned allegations which do not appear material to the central adverse action

in *Lamb I*, Lamb's termination.  *See id.*, ECF Nos. 23-23; 23-24; 41; 69.  Although the

Defendants urge otherwise, this Court cannot conclude with confidence that these events were

part of the "core of operative facts" in *Lamb I*.  *Pueschel*, 369 F.3d at 355 (quotation omitted).

Thus, Lamb's retaliation claim premised on these three discrete events from 2014—and these

events only—is not barred by *res judicata*.  The motion to dismiss the retaliation claim premised

on the 2014 conduct must be denied.[8]

---

[8] Defendants raise solely *res judicata* as grounds for dismissing the retaliation claim based on the 2014 conduct, despite other seeming deficiencies with the claim.  For one, the Court is concerned that Lamb did not file

### ii.       Due Process Claims (Count V)

In this Count, Lamb focuses not on the underlying events that were the subject of the

MSPB hearing and 2015 EEOC Complaint (and litigated in *Lamb I*), but on the manner in which

the 2015 EEOC Complaint had been handled procedurally.[9]  ECF No. 42 ¶ 146; *cf.* ECF No. 37-

8 at 3; ECF No. 37-7 at 1–2.  According to Lamb, "[b]oth the EEOC and the federal defendants .

. . refused to turn over the Hearing Record in [his] case, which . . . made it impossible for [him]

to pursue his claims."  ECF No. 42 ¶ 144.  Defendants move to dismiss or alternatively for

summary judgment on several grounds, including that the averred facts are "patently untrue."

ECF No. 37-1 at 26.  Based on the record before it, the Court agrees that summary judgment in

Defendants' favor is proper.

At its core, Lamb asserts that the failure to give him a copy of the "full record" that the

EEOC "considered when disposing of his case" amounts to a due process violation.  ECF No. 41

at 8.  In response, Defendants have submitted documentation showing that Lamb in fact received

the 1411-page ROI, which the Navy and EEOC relied upon when issuing their decisions.  ECF

No. 37-6; ECF No. 37-7 at 4; ECF No. 37-8 at 4.  Lamb does not dispute having received the

ROI, and in fact submitted this ROI in support of his Complaint.  ECF No. 41 at 8; ECF No. 53,

---

this suit within the 90-day filing window after the EEOC issued its decision on August 30, 2019.  *Compare* ECF No. 37-5 at 13 *with* ECF No. 1 (91 days after presumed date of receipt); *see also Harvey v. City of New Bern Police Dept.*, 813 F.2d 652, 654 (4th Cir. 1987); *Griffin v. Prince William Hosp. Corp.*, 716 F. Supp. 919, 921 (E.D. Va. 1989); *Weathersbee v. Balt. City Fire Dept.*, 970 F. Supp. 2d 418, 426–27 (D. Md. 2013).  Nor is it altogether clear that the purported adverse actions are legally sufficient to sustain a retaliation claim.  *See Burlington Northern & Sante Fey Ry. Co. v. White*, 548 U.S. 53, 68–69 (2006); *see also Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp. 2d 480, 491–92 (D. Md. 2013).  Defendants, however, made none of these arguments in their motion, and the Court certainly will not make Defendants' arguments for them.  *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653–54, 657 (4th Cir. 2006) (advising courts against raising affirmative defenses *sua sponte*); *Weathersbee*, 970 F. Supp. 2d at 426–27 (explaining 90-day time limit for initiating Title VII claims is not a "jurisdictional requirement" but "treated like a statute of limitations" (quotations omitted)); *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (finding Title VII's charge-filing requirement is a "mandatory claim-processing rule [that] may be forfeited if the party asserting the rule waits too long to raise the point" (quotation omitted)).

[9] The 2015 EEOC Complaint corresponds to Agency No. DON 15-42191-01801 and Appeal No. 0120180652.  ECF No. 37-8.

Ex. 2.  He instead maintains, without any factual support, that the ROI was not "the full record," and so "he was unable to ascertain whether his [s]tatement was actually turned over to the tribunal."  ECF No. 41 at 8.

Lamb's claim is purely speculative.  Lamb does not contend what, if any, information was omitted, but simply that the ROI is not the full record.  Further, the ROI appears on its face to include the full record of Lamb's statements he provided to the assigned investigator and what became part of the investigative record.  ECF No. 53, Ex. 2 at 001125–27; *see also id.* at 000006 (investigator summary that Lamb provided an unsworn statement as part of his Complaint); *id.* at 000011 (noting Lamb did not provide sworn rebuttal statement); *id.* at 000029 (despite multiple follow-ups with counsel, investigator never received Lamb's signed basis and claims form); *id.* at 001098 (after confirming receipt over phone, Lamb never answered interrogatory or a signed rebuttal statement).  Accordingly, no evidence suggests at all that Lamb had not received the "full record."  Because the record reflects, indisputably, that Lamb received the full ROI underlying the Navy and EEOC's decisions, no due process claim can lie for failure to provide the same.  *See* ECF No. 37-6; ECF No. 37-7 at 4.  The Court grants summary judgment in Defendants' favor as to this claim.

Lamb next alleges that his due process rights were violated when his former employer "deliberately failed" to process his 2019 claim for federal workers' compensation benefits.  ECF No. 42 ¶ 148.  Read most charitably to Lamb, he appears to assert a *procedural* due process violation.  Thus, Lamb must demonstrate that he suffered "'(1) a deprivation; (2) of life, liberty, or property; (3) without due process of law.'"  *Nurriddin v. Acosta*, 327 F. Supp. 3d 147, 157 (D.D.C. 2018) (quotation omitted).

Disability benefits under the Federal Employment Compensation Act "constitute a valid

property interest." *Id.* (quotation omitted).  That said, the Court is not convinced that Defendants' *denial* of such benefits, as opposed to withdrawal of benefits already conferred, qualifies as a constitutionally protected deprivation.  *See id.*  However, even if the Court assumes that Lamb has stated a valid property interest, nothing in the administrative record supports any allegation that he was deprived due process of law.  *See id.* at 158.

Lamb submitted his workers' compensation claim via the Department of Labor's Employees Compensation Operations & Management Portal ("ECOMP") on December 24, 2019.  ECF No. 42 ¶ 111.  On January 9, 2020, the Navy's Injury Compensation Program Administrator ("ICPA"), Roger Chase, emailed Lamb that because he did not have a current supervisor to sign his claim, he should not submit his materials through ECOMP and instead forward his documentation directly to Chase for processing.  ECF No. 37-10 at 3.  Chase followed-up with Lamb twice by email; Lamb did not respond.  *Id.* at 1-3.  Chase next called Lamb to make sure he knew about next steps in the process, only to have Lamb hang up on him. *Id.* at 1.

The next month, February 5, 2020, Vincent Mcintyre, also from ICPA, emailed Lamb to explain why he could not submit his claim via ECOMP and offered to manually re-enter Lamb's claim into the system.  ECF No. 37-11.  Mcintyre also sent Lamb a checklist of medical documentation needed to submit his claim.  *Id.*  Nothing suggests that Lamb ever responded to Mcintyre or submitted the necessary medical documentation.  Rather, Lamb seems to argue that the mere request for the medical documentation in support of his workers compensation claim, when his former supervisor already had "all … necessary medical information," was itself a due process violation.  ECF No. 42 ¶ 148.

When viewing the record most favorably to Lamb, no set of facts support that he had

been denied due process.  First, the application procedure itself was minimally burdensome.  *See Nurriddin*, 327 F. Supp. 3d at 150 ("When a claim for compensation is submitted," DOL's Office of Workers' Compensation Programs "determines whether the claimant is entitled to such compensation."  The complainant must also "submit evidence establishing that the claimed medical condition is 'causally related' to an alleged workplace injury." (quotation omitted)); *see also* 20 C.F.R. § 10.115 (specifying medical documentation that claimant must provide in support of application).  Next, even Lamb does not contest that he failed to follow the directions to complete his application.  Rather, he rests the claim on the dubious argument that his former supervisor already had the records that the workers' compensation officials now needed.  ECF No. 42 ¶ 148.  Lamb simply cannot now cry denial of due process when he alone chose not to avail himself of the same.  *See Prestop v. Hamlett*, No. GBD-99-2747, 2001 WL 363676, at *7 (S.D.N.Y. Apr. 12, 2001).  Summary judgment is granted in Defendants' favor.

### iii.    Privacy Act Claims

In his remaining Privacy Act claims, Lamb avers that Defendants (1) "fail[ed] to maintain accurate records" and then (2) "improperly shared [his] private information with . . . subsequent and/or prospective employers."  ECF No. 42 ¶¶ 127–28.  Lamb presses that he "has been denied employment opportunities" as a result.  *Id.*

As to his first claim, the Privacy Act provides a private cause of action "[w]henever an agency … fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual."  5 U.S.C. § 552a(g)(1)(C).  But the Second Amended Complaint is utterly silent

as to the facts that support this contention.  Because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, the claim must be dismissed.  And because Lamb has had multiple opportunities to correct the defects in his pleadings, the claim is dismissed with prejudice.  *See Weigel*, 950 F. Supp. 2d at 825–26.

As to his second Privacy Act claim, Lamb alleges that after his termination from the Navy, he accepted a contractor position with the MCC that required a background check.  ECF No. 42 ¶ 102.  While the background check was pending, Lamb had been preliminarily cleared to begin work with MCC.  *Id.*  Two months later, MCC abruptly terminated Lamb without explanation.  *Id.* ¶¶ 103, 105.  Lamb learned through a FOIA request that the Navy had shared his employment records with the MCC as part of the background check, which in Lamb's view, led to his termination from MCC.  *Id.* ¶¶ 109, 127; ECF No. 41 at 7.

Under the Privacy Act, agencies are prohibited from disclosing an individual's records "to another person or to another agency, except pursuant to a written request by, *or with the prior written consent of*, the individual to whom the record pertains."  5 U.S.C. § 552a(b) (emphasis added).  Defendants argue that because the record indisputably shows that Lamb consented to the disclosure when he agreed to a background check, the disclosure cannot support a Privacy Act claim.  ECF No. 60 at 5.  The Court agrees.

Lamb has previously sued MCC, although not in this Court.  In that prior action, Lamb clearly admitted to having completed and signed a Questionnaire for Public Trust Positions, Standard Form 85P ("SF-85P"), in anticipation of his placement at MCC.  *See Lamb v. Millenium Challenge Corp.*, No. 16-765, ECF No. 9 ¶ 7 (D.D.C. May 26, 2016); *see also id.*, ECF No. 49 at 2 ("Lamb successfully completed the required questionnaires and was cleared to

begin work as an MCC personal services contractor").  The SF-85P is a standard government form in which Lamb, as the signer, authorizes the release of his information to the investigating agency "for the purpose of making a determination of suitability or eligibility for a public trust position."  ECF No. 60-2.  Among other things, the signer authorizes the person or agency "conducting [the] background investigation or reinvestigation to obtain any information relating to [the signer's] activities, conduct and character from individuals, schools, residential management agents, [and] *employers*," among "other sources of information."  *Id.* (emphasis added).  The signer also authorizes "custodians of records and other sources of information pertaining to [him] to release such information upon request of the investigator, special agent, or other duly accredited representative of any Federal agency authorized above regardless of any previous agreement to the contrary."  *Id.*

Lamb wisely does not dispute that he signed the SF-85P form as part of his MCC application (ECF No. 61 at 2–3), and so the Court accepts this fact as true.  ECF Nos. 60-1 ¶ 7; 60-2; *see* Fed. R. Civ. P. 56(e).  Lamb instead presses that the form itself does not grant "blanket consent" to disclose the entirety of his records.  ECF No. 61 at 2.

When viewing the plain language of the SF-85P's form most favorably to Lamb, his claim fails as a matter of law.  The SF-85P form unmistakably permits full disclosure of all Navy records to MCC.  ECF No. 60-2.  And because Lamb consented to such disclosure, the Defendants' actions cannot constitute a Privacy Act violation.  *See* 5 U.S.C. § 552a(b).  Thus, summary judgment must be granted in Defendants' favor.

### V.        Conclusion

For the above-stated reasons, Lamb's retaliation claim concerning a limited set of events that took place in 2014 survives challenge.  The remaining claims are either dismissed with prejudice or summary judgment is entered in favor of Defendants.  A separate order follows.

 March 30, 2021                                              _____/S/_____
Date                                                              Paula Xinis
                                                                      United States District Judge